UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**NICHOLAS S. D'AMORE,**
    Debtor

Chapter 7
Case No. 04-10546-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

**JOHN J. AQUINO, CHAPTER 7
TRUSTEE,**
    Plaintiff

v.

Adv. P. No. 04-1402

**KEVIN P. CURRY,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

The matter before the Court is the "Motion of Chapter 7 Trustee for Approval of Stipulation Regarding Complaint for Determination of Interest in Property and Claims of Kevin P. Curry" (the "Compromise Motion"). Pursuant to the Compromise Motion, the Chapter 7 Trustee (the "Trustee") of the estate of Nicholas S. D'Amore (the "Debtor"), and Kevin P. Curry ("Curry") have agreed, *inter alia,* that Curry will waive and release certain

1

claims he has asserted against the estate in exchange for the Trustee's agreement to convey to him a 1/3 interest in property located at 221 Commercial Street, Boston, Massachusetts (the "Property"). The Debtor filed an objection to the Compromise Motion. The Debtor's former spouse, Grace D'Amore, also filed an objection,[1] but she failed to appear at the hearing on the approval of the Compromise Motion, which this Court conducted on November 7, 2005. Following the hearing, at the Court's request, the Debtor and Curry submitted briefs, together with affidavits in support of their respective positions, on the issues presented, including how the doctrine of *in pari delicto* affects the Compromise Motion.[2]

---

[1] In her Verified Opposition to the Compromise Motion, Grace D'Amore stated:

Claimant Curry admitted to undersigned Creditor, and her three adult children, that the "default" Judgment he received from the Suffolk Superior Court was "bogus" and was recorded agains the property to protect the debtor's interest in the property. Claimant Curry admitted he never had an interest in the property.

[2] According to one commentator,
The doctrine is premised on the equitable principle that no court will lend its aid to one who bases a cause of action upon an immoral or illegal act. Where the plaintiff has acted wrongfully through an agent in the scope of the agency, the usual presumption is the wrongful act of the agent is attributed to the principal. However, where the agent, in his or her own interest, acts adversely to the interests of the principal, such acts are so incompatible that they destroy the agency, and the defense based on those acts is then no longer available to the defendant. This is known as the adverse interest exception to the in pari delicto rule. Where, however, the persons dominating or controlling the principal orchestrate the unlawful conduct, so that the party who could have put an end to the conduct is the agent itself in its capacity as principal, the adverse interest exception is negated. This is known as the "sole actor" rule, which operates as an exception to the adverse interest exception.

2

The issue framed by the pleadings and the parties is whether the Trustee satisfied his burden with respect to the approval of the Compromise Motion under the standard articulated by the United States Court of Appeals for the First Circuit in Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995). Upon review, this Court concludes that the determinative issue is whether this Court should abstain from considering any matters relating to Curry's purported ownership interest in the Property arising out of a judgment issued by the Middlesex Superior Court, Department of the Trial Court, on June 10, 1991 in view of the Debtor's allegations of misconduct set forth in his objection, memorandum, and affidavit.

The material facts needed to resolve the Trustee's Compromise Motion, as opposed to those needed to resolve the ultimate issues related to Curry's ownership interest in the Property, are not in dispute. Accordingly, the Court finds as follows.

## II. FACTS

The Debtor filed a Chapter 11 petition on January 23, 2004. On April 2, 2004, Curry filed two proofs of claim, one in the sum of $15,000 for unspecified legal services performed between January 1, 2002 and December 30, 2004 (the "Legal Services Claim"), and the other in an amount "more than $100.00" for "property interest, rents" from June 10, 1991 to the

---

Jeffrey Davis, *Ending the Nonsense: The In Pari Delicto Doctrine Has Nothing to Do with What is § 541 Property of the Bankruptcy Estate*, 21 Emory Dev. J. 519 (2005)(footnotes omitted). As to the application of the doctrine in a bankruptcy case, *see* In re Advanced Risc Corp., 324 B.R. 10 (D. Mass. 2005).

3

present (the "Property Interest Claim"). Curry attached to his Property Interest Claim a copy of a judgment issued by the Middlesex Superior Court, dated June 10, 1991, which provides the following:

> After hearing it is ordered, decreed and adjudged that:
> Kevin P. Curry owns a 1/3 interest in the property known as 221 Commercial Street, Boston, MA and the Defendants, their agents and servants are directed to convey said interest to the said Kevin P. Curry.

The Debtor's signature appears on the Judgment indicating his assent to it.

On April 28, 2004, the Debtor filed an Ominbus Objection to Proofs of Claim, including the two proofs of claim filed by Curry. The Debtor objected to the Legal Services Claim for $15,000 on the following ground:

> [T]here are no documents appended to the Proof of Claim indicating what amount, if any, the Debtor owes Kevin P. Curry. There is no explanation of the services nor is there an accounting of said sum. The Debtor objects to the entire claim and requests that the Court sustain the objection in full.

The Debtor objected to the Property Interest Claim, stating:

> [A]lthough a judgment of partial Ownership is appended by Kevin P. Curry to his Proof of Claim; there is no accounting of the amounts that are alleged as owed. Kevin Curry acted as Mr. D'Amore's counsel for several years and Mr. D'Amore objects to the claim in full except to the extent the judgment is valid.

On May 26, 2004, Curry filed a "Motion for Payment of One Third of the Income of Property on Commercial Street, Boston, MA owned by the Debtor of which Kevin Curry Has a One Third Interest" (the "Motion for Payment"), as well as a Response to the Debtor's objections to his claims. The Debtor, in turn, filed an objection to Curry's Motion for Payment. Before the Court could hear the various matters, however, the Debtor

converted his case to a case under Chapter 7 on June 21, 2004 and John Aquino was appointed Chapter 7 Trustee.

On November 12, 2004, the Trustee commenced an action against Curry captioned "Complaint for Determination of Interest in Property." In his Complaint, the Trustee represented that he continued to prosecute the Debtor's objections to Curry's proofs of claim. The Trustee also alleged, *inter alia*, the following:

> 9. There has been no conveyance of any interest in the Commercial Street Property to the Defendant.
> 10. Upon information and belief, at no time subsequent to the issuance of the Consent Judgment did the Defendant request the conveyance of any interest in the Commercial Street Property to Defendant.
> 11. Upon information and belief, at no time did Defendant seek to enforce the consent judgment in any manner, and Defendant never sought an order compelling the Defendant to convey any interest in the Commercial Street Property pursuant to the Consent Judgment, nor did Defendant ever seek the appointment by the Suffolk Superior Court of any party charged with the execution of conveyancing documents in lieu of the Debtor's execution of any such documents.
> 12. The Defendant recorded the Consent Judgment at the Suffolk County Registry of Deeds on January 24, 2002 - a full 10 ½ years after entry of the Consent Judgment by the Suffolk Superior Court.
> 14. Upon information and belief, the Consent Judgment was recorded at the Suffolk County Registry of Deeds only after the initiation of divorce proceedings between the Debtor and his spouse, and the Debtor was informed by Defendant that the purpose of the recordation at that time was to "protect" the Debtor's interest in the Commercial Street Property.
> 15. Upon information and belief, at no time prior to the submission of the Defendant's proofs of claim did the Defendant seek to enforce any alleged interest in income generated by the Commercial Street Property.

Based upon these allegations, the Trustee sought a declaratory judgment that Curry does not have an ownership interest in the Property and that he is barred and precluded from asserting any ownership interest in the Property and any proceeds.

5

In response to the Trustee's Complaint, Curry filed a Motion to Dismiss and a Memorandum in which he maintained that his interest in the Property was valid, stating the following:

> Curry's interest in the Property is valid and paramount to all competing interests as matter of law by virtue of the plain meaning of Mass. Gen. Laws c. 183 §§ 43 and 44 and principles of res judicata and collateral estoppel. In addition, the Trustee's claim that Curry is barred from asserting his claim by the doctrine of laches is misplaced. Even assuming that laches can be asserted where, as here, no statute of limitations applies, and where, as here, a self executing judgment requiring no action for it to be effective is at issue, [sic] Curry recorded the judgment well within the twenty (20) years, at a minimum, the statute of limitations provides to him to enforce his judgment [sic].[3]

The Court scheduled a hearing for April 5, 2005 on the Motion to Dismiss. At the hearing, the parties reported a settlement. Approximately two months later, on June 3, 2005, the Trustee filed the Compromise Motion which the Court heard on November 7,

---

[3] Section 43 of Chapter 183 provides the following:
Whenever a final decree in equity shall be made by the supreme judicial, superior, probate or land court directing that a deed, conveyance or release of any real estate or interest therein shall be made, and the party directed to make such deed, conveyance or release does not duly execute it within the time specified in the decree, the decree itself shall operate to vest title to the real estate or interest in the party entitled thereto by the decree as fully and completely as if such deed, conveyance or release had duly been executed by the party directed to make it.
Mass. Gen. Laws ch. 183, § 43. Section 44 provides:
The recording or registration of a duly certified copy of such decree, attested by the clerk, assistant clerk, register or assistant register, recorder or deputy recorder, as the case may be, of the court where made, in the registry of deeds of the district where said real estate is situated, shall have the same force and effect as if a duly executed deed, conveyance or release had so been recorded or registered.
Id. at § 44.

6

2005.[4] At the hearing, counsel to the Trustee represented that, as a result of developments arising after the filing of the Compromise Motion, creditors of the Debtor's estate will be paid 100% with interest. He stated: "I want the Court to understand fully that it is our belief that . . . the debtor has perhaps the only remaining interest in . . . this matter with Mr. Curry." Transcript, November 7, 2005 at 13-14.

### III. THE COMPROMISE MOTION

The terms of the compromise, as summarized in the Compromise Motion, are as follows:

> . . . Curry shall waive and release the Fee Claim, and shall waive and release that portion of the Property Claim which asserted an interest in the profits derived from the operation of the Property during the period June 10, 1991 through February 28, 2005. As soon as practicable after approval of the Stipulation, the Trustee shall convey to Curry a 1/3 interest in the Property, and shall provide Curry with an accounting of all receipts and disbursements with respect to the Property occurring on and after March 1, 2005. Thereafter, commencing on February 15, 2006 and on each annual anniversary date thereof until the Property is conveyed from the bankruptcy estate, the Trustee shall provide Curry with an accounting of all receipts and disbursements with respect to the Property for the one-year period then ended. In addition, commencing on February 28, 2006, and on each annual anniversary date thereof until the Property is conveyed from the bankruptcy estate, the Trustee shall distribute to Curry his one-third share of all profits from the Property, subject to the Trustee's rights to retain from such annual distribution a reasonable reserve for one-third of the expenses and costs associated with maintenance, operation and management of the Property for the related period.

In support of the compromise, the Trustee represented that despite the "perceived

---

[4] The Court originally scheduled the hearing for August 9, 2005. Because of requests for continuances filed by Grace D'Amore and Curry, the Court did not hear the Compromise Motion until November 7, 2005.

7

conclusive effect" of the judgment entered by the Middlesex Superior Court and the agreement by the Trustee to deliver a confirmatory deed to Curry, "the Trustee continued to dispute any right of Curry to claim an accounting or any share of operating profits from the Property during the 14-year period in which Curry took no affirmative action to demand, or even request, such accounting or profit participation." The Trustee also continued to object to the Legal Services Claim because "Curry was unable to provide any documentation supporting the existence or amount of such claim."

## IV. DISCUSSION

In Jeffrey v. Desmond, the First Circuit set forth the following factors for bankruptcy courts to consider in evaluating compromises filed pusuant to Fed. R. Bankr. P. 9019(a). These inclue: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. 70 F.3d at 185 (citing In re Anolik, 107 B.R. 426, 429 (D. Mass. 1989)).

For the reasons set forth below, and because the Trustee, through his counsel, has represented that the estate is solvent and creditors will be paid 100% of their claims plus interest, this Court shall sustain the Debtor's objection, deny the Compromise Motion, and, *sua sponte*, abstain from determining any issues with respect to ownership of the Property and Curry's related claim for rents and profits attributable to his ownership interest. Were it not for the the Trustee's representations that all creditors will be paid in full, this Court

would rule on the merits of the Compromise Motion. Because of the solvency of the estate, however, the Court finds that the Debtor has standing to challenge Curry's claims and the Trustee's Compromise Motion. *See generally* In re Choquette, 290 B.R. 183, 188-89 (Bankr. D. Mass. 2003). As the court noted in Choquette, although a Chapter 7 debtor is not normally a party in interest or a "party aggrieved" with standing to object to proofs of claim or settlements between the trustee and creditors of the estate, "'[t]here are two exceptions: (1) *if the debtor can show that a successful appeal would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus under Bankruptcy Code § 726(a)(6), 11 U.S.C. § 726(a)(6),* . . . or (2) the order appealed from affects the terms of the debtor's discharge in bankruptcy.'" Id. (quoting Kowal v. Malkemus (In re Thompson), 965 F.2d 1136, 1144, n. 12 (1st Cir. 1992)(emphasis supplied). Because the Trustee, through counsel, has represented that there will be a surplus and has averred that the Debtor is the only entity with a pecuniary interest in the outcome of the dispute, other than Curry, the Court finds that the Debtor has satisfied the test for standing articulated by courts in the First Circuit.

The affidavits reveal that the Debtor and Curry, as well as various other attorneys associated with Curry, have had a long and complicated relationship which has intersected with several facets of the Debtor's life, including his acquisition of the Property and his divorce from Grace D'Amore. The relationship and the legal services performed by Curry, his sister, Kathleen M. Curry, and his former associate, Gerald J. Zyfers, a disbarred attorney, are germane to the 1991 judgment of the Middlesex Superior Court, which the

9

Debtor now asserts was obtained through fraud or some other impropriety on the part of Curry. The validity of the Middlesex judgment is at the heart of the Debtor's objection to the Compromise Motion and Curry's claim to a 1/3 interest in the Property as well as profits from its operation.

In view of the representations made in the affidavits and Curry's position that the June 10, 1991 judgment is effective to provide him with a 1/3 interest in the property by operation of law, this Court determines that the forum best suited to interpret and enforce the judgment is the court from which it issued, namely the Middlesex Superior Court. If the Debtor was misled in any way, or there was fraud upon the state court, the Debtor can request the Middlesex Superior Court to vacate its order and clarify that Curry does not have an interest in the Property. Conversely, if, as Curry maintains, Mass. Gen. Laws ch. 183, §§ 43 and 44 are sufficient to convey an interest in the Property to him, he does not need a confirmatory deed from the Trustee. He can request the state court to partition the Property and award him his share of any profits generated by the Property from the proceeds of the sale.

Section 1334(c)(1) of title 28 provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c). "[C]ourts have broad discretion to abstain from hearing state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'"

10

In re Gober, 100 F.3d 1195, 1206 (5th Cir. 1996).

Courts have formulated a number of factors to consider in determining whether to voluntarily abstain from a matter. These include:

(1) the effect of the abstention on the efficient administration of the bankruptcy estate;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy forum;

(5) the basis of bankruptcy jurisdiction, if any, other than section 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the banrkuptcy court;

(9) the burden on the bankruptcy court docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of non-debtor parties.

See William C. Hillman and Margaret M. Crouch, *Bankruptcy Deskbook*, § 2:1.2[E] at 2-7 (PLI 2005)(citing, *inter alia*, Twyman v. Wedlo, Inc. (In re Wedlo, Inc.), 204 B.R. 1006, 1017 (Bankr. N.D. Ala. 1996)).

11

An examination of these factors compels the conclusion that abstention is warranted. Litigation between the Debtor and Curry with respect to the Property is easily severed from the bankruptcy case. Indeed, severing the matter will facilitate a quick resolution of any remaining issues in the cases and a prompt distribution to creditors. Moreover, resolution of the dispute between the Debtor and Curry, if pursued by either party in this forum, will adversely affect the administration of the bankruptcy by delaying its closing. Resolution of the dispute involves only issues of state law and depends upon the interpretion of an order issued by the Superior Court, as well as the conduct of parties, including attorneys, appearing before it. Because the Trustee and Curry attempted to settle the adversary proceeding at an early stage, Curry will not be prejudiced if litigation continues in another forum. In view of the anticipated 100% distribution to creditors of the estate and the adequate remedy available to both Curry and the Debtor in the state court, this Court finds that its docket should not be burdened with a dispute that can only adversely affect the estate by delaying the closing of the case and provide no benefit to creditors whose claims are to be paid in full with interest. Therefore, in the interest of comity with the Superior Court, this Court shall abstain.

## V. CONCLUSION

The parties' briefs reveal the extent to which the judgment of the Middlesex Superior Court is central to a resolution of the issue of ownership of the Property. This Court concludes that that court should be the one to determine whether its judgment should be set aside because of alleged misconduct on the part of either Curry or the Debtor.

Accordingly, this Court shall enter an order denying the Compromise Motion and dismissing the Trustee's adversary proceeding.

The Legal Services Claim, unlike the Property Claim, however, is not dependent upon Curry's ownership of the Property. The ground for abstention, namely comity with the Superior Court, is absent. Accordingly, the Court shall schedule an evidentiary hearing to consider the merits of Curry's Legal Services Claim.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 16, 2005
cc: Donald F. Farrell, Jr., Esq., Jeffrey D. Sternklar, Esq., Laurel E. Bretta, Esq.

13